UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


NXSYSTEMS, INC., an Oregon corporation,

        Plaintiff,

        v.

MONTEREY COUNTY BANK, a California
State Bank; and NORTHERN CALIFORNIA
BANCORP, INC. a California registered bank
holding company,

        Defendants.

Case No. 3:12-cv-00905-ST

OPINION


STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, NxSystems, Inc. ("NXS"), alleges various state law tort claims against defendants, Monterey County Bank and Northern California Bancorp., Inc., arising from their collection of excessive fees for issuing stored value cards and providing other banking services to NXS's clients and customers. This court has diversity jurisdiction under 28 USC § 1332. All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c) (docket #29).

1 – OPINION

Defendants have filed a Motion to Dismiss for Lack of Proper Service, Lack of Personal Jurisdiction, and Lack of Proper Venue, or, in the Alternative, to Compel Arbitration and Dismiss or Stay the Action in Connection With the Same (docket #11).   For the reasons set forth below, that motion is granted as to lack of proper service on Northern California Bancorp, Inc., and lack of personal jurisdiction as to both defendants and otherwise denied as moot.

## ANALYSIS

### I.    Lack of Proper Service

Northern California Bancorp, Inc., first moves for dismissal under FRCP 12(b)(5) based on insufficient service of process.  NXS filed an unsigned Proof of Service (docket #6), followed a few days later by an identical Proof of Service signed by a process server in Oregon attesting that he had "served the summons on Charles T. Chrietzberg, Jr., who is designated by law to accept service of process on behalf of Northern California Bancorp, Inc., on June 26, 2012" (docket #9).  The Proof of Service does not state how the summons was served on Mr. Chrietzberg.  Northern California Bancorp, Inc., has submitted evidence that Mr. Chrietzberg was not personally served with the summons and a copy of the Complaint, but instead received them via Federal Express on June 29, 2012.  Chrietzberg Decl., ¶ 2 & Ex. A (Federal Express envelope).  NXS has submitted no contrary evidence.

According to FRCP 4(h)(1)(A)-(B), a corporation must be served either "in the manner prescribed by Rule 4(e)(1) for serving an individual" or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."   Northern California Bancorp., Inc., argues that because the summons was not personally served on Mr. Chrietzberg, it was not properly delivered to him and, therefore, service must comply

with FRCP 4(e)(1) which allows service in accordance with the law of the state "where the district court is located or where service is made."[1]

Northern California Bancorp, Inc., assumes, but fails to cite any authority, that FRCP 4(h)(1) requires delivery by personal service on a corporation's agent for service of process in the same manner as FRCP 4(e)(2)(A) which requires delivery "to the individual personally." However, FRCP 4(h)(1) only requires service on a corporation "by delivering a copy of the summons and of the complaint" to the agent for service of process and does not specify that it must be delivered to that agent "personally." The issue is whether the absence of the word "personally" in FRCP 4(h)(1) allows delivery on a corporation's agent by Federal Express.

Several federal courts have held that the term "mail" in the Federal Rules of Civil Procedure governing service does not encompass private carriers such as Federal Express. *See Magnuson v. Video Yesteryear*, 85 F3d 1424, 1431 (9th Cir 1996) (FRCP 5 does not allow service by Federal Express); *Audio Enters., Inc. v. B & W Loudspeakers of Am.*, 957 F2d 406, 409 (7th Cir 1992) (same for FRCP 4); *Prince v. Poulos*, 876 F2d 30, 32 n1 (5th Cir 1989) (same for FRAP 25(a)). However, service under FRCP 4(h)(1) does not authorize service by mail, rendering these decisions unhelpful. A more apt comparison is FRCP 45 which requires "delivering" a subpoena to the named person. At least one federal

---

[1] FRCP 4(e)(1) allows service under the law of Oregon (where this District Court is located) or the law of California (where service was allegedly made). However, neither state specifically provides for service of process by Federal Express. ORCP 7D(2) (providing for service by personal service and mail); Cal Civ Proc Code ("CCP") § 415.10, *et seq* (providing for service by personal service and mail). In addition, personal service under the applicable state rules is not complete until the summons and complaint are actually delivered or until several days after such transmittal. ORCP 7D(2)(d)(ii) (mail service out-of-state is not deemed complete until defendant signs a receipt or seven days after mailing); CCP § 415.10 (a summons served out-of-state by first-class mail, postage prepaid, with return receipt requested, is not complete until the 10th day after such mailing).

court has held that FRCP 45 is not limited to personal service and allows delivery by Federal Express. *Western Resources, Inc. v. Union Pacific R.R. Co.*, No. 00-20430CM, 2002 WL 1822432, at *2 (D Kan July 23, 2002); *see also Green v. Baca*, CV 02-20474MMMMANX, 2005 WL 283361, at *1 n1 (CD Cal Jan. 31, 2005) (agreeing that FRCP 45 is not limited to personal service). Therefore, it is far from clear that FRCP 4(h)(1), which uses the same language as FRCP 45, bars delivery to the proper person by Federal Express.

The Federal Express envelope in evidence is addressed to Mr. Chrietzberg. Although the signed receipt is not in evidence, Mr. Chrietzberg admits that he received the envelope, leading to the reasonable conclusion that he signed a receipt for it. Had the Federal Express envelope simply been addressed to Northern Bancorp, Inc., and received and signed by someone other than Mr. Chrietzberg, then service would not have complied with FRCP 4(h)(1). *Taylor v. Stanley Works*, No. 4:01-CV-120, 2002 WL 32058966, at *6 (ED Tenn July 26, 2002); *see also Norris v. Dist. of Colum. Gov't*, 2008 WL 7994986, at *8 (DDC Aug. 1, 2008) (finding service insufficient where a mail room clerk signed for a Federal Express package not addressed to an officer or agent of the university).

Even if delivery by Federal Express under FRCP 4(h)(1) is permissible, the Proof of Service fails to comply with FRCP 4(l) which requires "the server's affidavit." The Proof of Service is signed by a process server in Oregon, who presumably gave it to Federal Express for delivery in California, and is not signed by the Federal Express employee who actually delivered the package to Mr. Chrietzberg. *Inversora Murten, S.A. v. Energoprojeckt Holding Co.*, Civil No. 06-cv-02312-MSK, 2009 WL 179463, at *5 (D Colo Jan. 22, 2009) (requiring proof of

service under FRCP 4(l) to be made by the affidavit of the Federal Express employee, not by the attorney or office staffer who hired Federal Express).

NXS contends that the Proof of Service was merely a request for a waiver of service and that actual notice of the Complaint to Northern California Bancorp, Inc., obviates the service requirement.  NXS originally submitted a request for waiver to outside counsel for Monterey County Bank.  Zubairi Decl., ¶ 2, Ex. A.  That request did not include Northern California Bancorp, Inc.  *Id.*  Defense counsel extensively met and conferred with NXS's counsel regarding the impropriety of its request to outside counsel who is not counsel of record in this matter.  *Id,* ¶¶ 2-6 Exs. A-E.  To avoid a threatened motion by NXS for costs and fees for refusal to accept service, Monterey County Bank authorized its outside counsel to execute the waiver on its behalf.  *Id,* ¶¶ 3-4, 6, Exs. B, C& E.  At no point in time did NXS request such a waiver as to Northern California Bancorp, Inc.  Instead, merely days later, NXS filed the unsigned Proof of Service on Northern California Bancorp, Inc. (docket #6).  Based on these facts, which NXS has not disputed, the Proof of Service was not merely a request for waiver of service.

NXS alternatively contends that Northern California Bancorp, Inc., had actual notice of the Complaint and therefore, was served pursuant to ORCP 7 allowing service in "any manner reasonably calculated, under all of the circumstances, to apprise the defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and defend."  However, "actual notice [of the Complaint] is, essentially, irrelevant" and not by itself a sufficient substitute for service of process.  *Davis Wright Tremaine, LLP v. Menken*, 181 Or App 332, 339, 45 P3d 983, 986-87 (2002) (citations omitted).  The focus is "not on

the defendant's subjective notice but, instead, on whether the plaintiff's conduct was objectively, reasonably calculated to achieve the necessary end." *Id.*

Under FRCP 12(b)(5), when service of process is insufficient, the court has discretion either to dismiss the action without prejudice or to quash service. *S.J. v. Issaquah Sch. Dist. No. 411*, 470 F3d 1288, 1293 (9th Cir 2006). According to FRCP 4(m), a defendant who is not served within 120 days after the complaint is filed must be dismissed without prejudice. That 120 day period has expired in this case. However, if the plaintiff shows "good cause for the failure," the court may extend the time for service. At the hearing on this motion, NXS orally requested an extension of time to complete service on Northern California Bancorp, Inc. Given the lack of objection to this request by defendants' counsel, the time for service should be extended. However, as explained below, this court has no personal jurisdiction over Northern California Bancorp, Inc., rendering moot any extension of time for service by this court.

## II.    Lack of Personal Jurisdiction

Both defendants seek dismissal under FRCP 12(b)(2) because they are not subject to personal jurisdiction in Oregon.

### A.    Legal Standard

The plaintiff has the burden of showing personal jurisdiction. *Boschetto v. Hansing*, 539 F3d 1011, 1015 (9th Cir 2008).

> If the district court decides the motion without an evidentiary hearing, which is the case here, then the plaintiff need only make a prima facie showing of the jurisdictional facts. . . . Absent an evidentiary hearing this court only inquires into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction. . . . Uncontroverted allegations in the plaintiff's complaint must be taken as true. . . . Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor.

*Id.* (citations omitted).

If the court finds a *prima facie* case of jurisdiction based on the pleadings and affidavits, the defendant may still later pursue the issue at an evidentiary hearing or trial and require the plaintiff to establish personal jurisdiction by a preponderance of the evidence. *Peterson v. Highland Music, Inc.*, 140 F3d 1313, 1319 (9th Cir 1998); *see also Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F2d 1280, 1285 (9th Cir 1977) (explaining different burdens of proof for different stages of personal jurisdiction inquiry).

In diversity cases, as here, the court looks to the law of the state in which it sits to determine whether it has personal jurisdiction over the nonresident defendant. *Western Helicopters, Inc. v. Rogerson Aircraft Corp.*, 715 F Supp 1486, 1489 (D Or 1989); *see also Boschetto*, 539 F3d at 1015 ("When no federal statute governs personal jurisdiction, the district court applies the law of the forum state."). ORCP 4 governs personal jurisdiction issues in Oregon. Because Oregon's long-arm statute confers jurisdiction to the extent permitted by due process, *Gray & Co. v. Firstenberg Mach. Co.*, 913 F2d 758, 760 (9th Cir 1990) (citations omitted), the federal due process analysis applies. *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F3d 1122, 1129 (9th Cir 2003) (when state long arm statute reaches as far as the Due Process Clause, court need only analyze whether the exercise of jurisdiction complies with due process); *see also Millennium Enters., Inc. v. Millennium Music, LP*, 33 F Supp2d 907, 909 (D Or 1999) (because Oregon's catch-all jurisdictional rule confers personal jurisdiction coextensive with due process, the analysis collapses into a single framework and the court proceeds under federal due process standards).

To comport with due process, the nonresident defendant must have certain "minimum contacts with the forum state so that the exercise of jurisdiction does not offend traditional

notions of fair play and substantial justice." *Bauman v. DaimlerChrysler Corp.*, 579 F3d 1088, 1094 (9th Cir 2009). The forum state may exercise either general or specific jurisdiction over a nonresident defendant. *Boschetto*, 539 F3d at 1016. Ordinarily, the court first engages in the general jurisdiction analysis. If the contacts are insufficient for a court to invoke general jurisdiction, the court then applies the relevant test to determine whether specific jurisdiction exists. *In re Tuli*, 172 F3d 707, 713 n5 (9th Cir 1999).

**B.    General Jurisdiction**

"For general jurisdiction to exist over a nonresident defendant . . . the defendant must engage in 'continuous and systematic general business contacts,' . . . that 'approximate physical presence in the forum state.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F3d 797, 801 (9th Cir 2004), quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 US 408, 416 (1984) (citations omitted). Merely engaging in commerce with residents of the forum state is not sufficient to meet the "fairly high" threshold of establishing general jurisdiction. *Bancroft & Masters, Inc. v. August Nat'l, Inc.*, 223 F3d 1082, 1086 (9th Cir 2000).

Defendants are both California entities who maintain their principal places of business in Monterey, California. Complaint, ¶¶ 4-5; Warner Decl., ¶ 2; Chrietzberg Decl.,¶ 3. They have submitted evidence, which NXS has not disputed, that they have no physical presence, employees or office in Oregon. Warner Decl., ¶ 3; Chrietzberg Decl., ¶ 4. Defendants have never directed any marketing efforts toward Oregon in the form of advertising or otherwise. Warner Decl., ¶ 4; Chrietzberg Decl, ¶ 5. Defendants have also never filed any taxes in Oregon; do not maintain any property, addresses or bank accounts here; have never registered to do business here; and have not designated an agent for service of process here. Warner Decl., ¶¶ 3, 5; Chrietzberg Decl., ¶¶ 4, 6. Based on these undisputed facts, defendants lack the type of

contacts that would approximate a physical presence sufficient to confer general jurisdiction in Oregon. *E.g., Helicopeteros*, 466 US at 416; *Glencore Grain Rotterdam B. V. v. Shivnath Rai Harnarain Co.*, 284 F3d 1114, 1124-25 (9ᵗʰ Cir 2002); *Albany Ins. Co. v. Rose-Tillman, Inc.*, 883 F Supp 1459, 1462-63 (D Or 1995).

Although submitting no evidence to the contrary, NXS contends that it should be allowed to conduct discovery to support general jurisdiction. Such requests are generally disallowed when based merely on the belief that such discovery will lead to evidence that establishes personal jurisdiction. *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F2d 535, 540 (9ᵗʰ Cir 1986) (holding that district court appropriately refused jurisdictional discovery where the plaintiffs "state only that they 'believe' discovery will enable them to demonstrate sufficient California business contacts to establish the court's personal jurisdiction"); *Boschetto*, 539 F3d at 1020 (affirming denial of request for discovery regarding personal jurisdiction where it was "based on little more than a hunch that it might yield jurisdictionally relevant facts"). NXS has offered no basis to believe that discovery will lead to relevant jurisdictional information, other than the possible existence of business relationships between defendants and other Oregon entities. However, such relationships, even if they existed, would not be sufficient to establish general jurisdiction over defendants. Thus, its request for such jurisdictional discovery is denied.

## C.    Specific Jurisdiction

In order to exercise specific jurisdiction, NXS must establish that: (1) "[t]he non-resident defendant purposefully direct[ed] his activities or consummate[d] some transaction with the forum or resident thereof; or perform[ed] some act by which he purposefully avail[ed] himself of the privilege of conducting activities in the forum, thereby invoking the

benefits and protections of its laws;" and (2) the claim "arises out of or relates to the

defendant's forum-related activities." *Schwarzenegger*, 374 F3d at 802.  Even if both of

these factors are established, specific jurisdiction does not exist where the defendant

establishes that the exercise of jurisdiction would not be reasonable.  *Boschetto*, 539 F3d at

1016 (quotations omitted).

///

### a.  <u>Purposeful Availment</u>

NXS argues that the purposeful direction test applies to its tort claims that do not arise

out of a contractual relationship.  However, NXS alleges that it commenced a business

relationship with defendants in December 2002 by agreeing "to pay a reasonable

compensation" to defendants in exchange for their banking services.  Complaint, ¶ 7.   In

addition to that reasonable compensation, NXS "agreed to allow the Defendants to access to

certain bank accounts to deduct certain third party charges incurred by Defendants in

performing the Services."  *Id*, ¶ 8.  As evidence of the business relationship, defendants have

submitted a copy of what they contend is that Card Sponsorship and Services Agreement

dated May 1, 2007, which is executed by NXS's predecessor, Virtual Automated

Technologies.  Warner Decl., ¶ 6 & Ex. A.  NXS seeks recovery of the allegedly excessive

fees charged by Monterey County Bank for its banking services which are not allowed by that

Agreement.  Therefore, all of its claims, even though designated as torts, arise out of

defendants' failure to comply with the terms of that Agreement.

Where a plaintiff's tort and other claims arise out of an agreement, they are subject to

the purposeful availment analysis that applies to contract claims.  *Boschetto*, 539 F3d at 1016

(a fraud claim arising out of the parties' "lone transaction for the sale of one item" may "sound

primarily in contract" and is subject to the purposeful availment analysis); *HK China Group, Inc. v. Beijing United Auto. & Motorcycle Mfg. Corp.*, 417 Fed Appx 664, 665-66 (9th Cir March 2, 2011) (applying the purposeful availment analysis where "the alleged fraud is merely the representation in the contract that gave rise to the breach"); *Sher v. Johnson*, 911 F2d 1357, 1362 (9th Cir 1990) (applying the purposeful availment analysis because "[a]lthough some of [the] claims sound in tort, all arise out of [the plaintiff's] contractual relationship with the defendants."); *Grassmueck v. Bishop*, No. CV-09-1257-HU, 2010 WL 1742091, at * 2-4 (D Or April 5, 2010) (applying the purposeful availment analysis to claims for fraudulent transfer, unjust enrichment, and constructive trust/equitable lien despite the plaintiff's exclusion of claim for breach of contract). Accordingly, the purposeful availment analysis applies to this case.

The purposeful availment analysis turns the defendant's conduct, including "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King Corp. v. Rudzewicz*, 471 US 462, 479 (1985). An out-of-state party does not subject itself to jurisdiction in a forum merely by entering into a contract with a forum resident under the purposeful availment test. *Id* at 478; *FDIC v. British- Am. Ins. Co., Ltd.*, 828 F2d 1439, 1443 (9th Cir 1987) ("It is clear that a contract alone is not sufficient to establish purposeful interjection into a forum state.").

While NXS is an Oregon entity, at no point in time did Monterey County Bank perform any services for NXS in Oregon. Warner Decl., ¶ 7. NXS submitted an application to Monterey County Bank in California for processing and settlement services for its prepaid card program. *Id*, ¶ 8. Monterey County Bank signed the agreement to provide such services in California and has performed all of such services in California. *Id*, ¶¶ 9-10. The accounts

created to provide settlement services for NXS were created and maintained by Monterey

County Bank in California. *Id.* The allegedly excessive fees were debited by Monterey County

Bank in California from NXS's California bank account. Supplemental Warner Decl., ¶¶ 5-7,

Exs. B-D.[2] The agreement submitted by Monterey County Bank provides that any disputes

regarding its services must be resolved in California and includes a mandatory forum selection

and choice of law provision requiring the resolution of any claims by arbitration in California

and under California Law. *Id*, ¶ 11, Ex. A. In apparent acknowledgement of those provisions,

NXS circulated a draft Arbitration Demand before filing this action which sought arbitration in

the County of San Francisco, California, because of the "[l]ocale provision included in the

contract." Warner Decl., Ex. C.

    Even assuming that NXS's tort claims are not predicated on any written or oral

agreement with Monterey County Bank, NXS fails to establish personal jurisdiction in

Oregon over defendants under the purposeful direction analysis. That test considers the

"effects" of a defendant's conduct by requiring that the defendant "have (1) committed an

intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant

knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F3d at 803, quoting

*Dole Food Co., Inc. v. Watts*, 303 F3d 1104, 1111 (9th Cir 2002). The mere fact that a foreign

act has foreseeable effects in the forum state is insufficient. *Bancroft*, 223 F3d at 1087.

    As established by the undisputed evidence submitted by defendants, all acts by

defendants, even if intended to cause harm to NXS in Oregon, were taken by Monterey

County Bank in California. Because none of defendants' acts were intentionally aimed at

---

[2] NXS argues that Monterey County Bank debited fees from its bank account in Oregon. However, it has not disputed the evidence submitted by Monterey County Bank that all fees were deducted from NXS's California bank accounts.

Oregon, NXS cannot satisfy the second prong of the purposeful direction analysis. The presence of NXS in Oregon is simply not by itself sufficient to establish personal jurisdiction over a non-resident defendant. *Schwarzenegger*, 374 F3d at 807 (the mere fact that defendant knew that plaintiff was present in its desired forum is not sufficient to establish personal jurisdiction where the defendant's underlying act was local to its own jurisdiction).

Certainly there is no indication that Northern California Bancorp, Inc., availed itself of the privilege of doing business in Oregon. Northern California Bancorp, Inc., is merely a holding company of Monterey County Bank, is not involved in the card processing business, and had nothing to do with the agreement or any of NXS's other allegations. Chrietzberg Decl., ¶¶ 7-8. Jurisdiction is not conferred over a non-resident holding company, such as Northern California Bancorp, Inc., where it is merely a shareholder that is not engaged in the underlying business that gives rise to the dispute. *Transure, Inc. v. Marsh & McLennan, Inc.*, 766 F2d 1297, 1299 (9th Cir 1985) ("[t]he existence of a parent-subsidiary relationship is insufficient to establish personal jurisdiction" over a non-resident parent even where the subsidiary is present); *Cai v. DaimlerChrysler AG*, 480 F Supp2d 1245, 1251 (D Or 2007) ("The bottom line is that [parent company's] presence in Oregon is limited to having a subsidiary here, which is 'insufficient to establish personal jurisdiction' over a nonresident defendant"), quoting *Transure*, 766 F2d at 1299; *Albany Ins. Co.*, 883 F Supp at 1464 (holding company did not purposely avail itself of the privilege of conducting activities in Oregon where, as here, it did not participate in the underlying transaction of its wholly-owned subsidiary that was the subject of the complaint).

### b.    <u>Arising Out of or Related to Forum Activities</u>

The second requirement for specific jurisdiction is that the claim must arise out of or relate to the defendant's forum-related activities.  To satisfy this requirement, the plaintiff must show that but for the defendant's forum-related contacts, the asserted claims would not have arisen.  *Menken v. Emm*, 503 F3d 1050, 1058 (9th Cir 2007).  That test is not met where, as here, the agreement giving rise to the dispute was negotiated outside of Oregon with an entity located outside of Oregon and requires performance outside of Oregon.  *See Home Poker Unlimited, Inc. v. Cooper*, No. 09-CV-460-BR, 2009 WL 5066653, at * 1, 7 (D Or Dec. 15, 2009) (plaintiff failed to meet the "but for" prong for personal jurisdiction, where the actions of the parties outside of Oregon triggered the claims, although the plaintiff was an Oregon corporation which claimed that it had been harmed in Oregon); *see also Glencore Grain*, 284 F3d at 1123-24 (holding that claims did not arise out of the plaintiff's desired forum where contracts were negotiated and required performance abroad).

NXS mistakenly relies on *Harris Rutsky & Co.*, *supra*.  In that case, unlike here, the defendant "purposefully sought out a business relationship with a California corporation, had ongoing contacts with the state over a five-year period, and drafted an agreement which called for performance, and was consummated in, California."  328 F3d at 1131.  In contrast, NXS sought out the relationship with Monterey County Bank in California and has maintained ongoing California contacts, including the maintenance of a bank account in California.

Nor can NXS establish that its claims arose out of any activities that were engaged in by either defendant in Oregon.  Instead, its claims are based on an agreement that Monterey County Bank negotiated, executed, and performed in California.  The allegedly excessive fees were debited by Monterey County Bank in California and from NXS's California bank

account.  Accordingly, NXS's claims arise exclusively from conduct that is alleged to have

taken place in California.

Moreover, as discussed above, Northern California Bancorp, Inc., which is merely a

holding company, did not have any involvement with that conduct.

       **c.**       <u>**Reasonableness of Jurisdiction in Oregon**</u>

Even if NXS could establish both that defendants purposely availed themselves of the

benefit of doing business in Oregon (or purposely directed their activities at Oregon) and that

its claims arise out of activities in Oregon, defendants argue that it would be unreasonable to

subject them to jurisdiction in Oregon.

The following factors are relevant to determining whether it is reasonable to exercise

personal jurisdiction:

> (1) the extent of the defendants' purposeful interjection into the forum
> state's affairs; (2) the burden on the defendant of defending in the forum;
> (3) the extent of conflict with the sovereignty of the defendants' state;  (4)
> the forum state's interest in adjudicating the dispute; (5) the most efficient
> judicial resolution of the controversy; (6) the importance of the forum to
> the plaintiff's interest in convenient and effective relief; and (7) the
> existence of an alternative forum.  None of the factors is dispositive in
> itself; instead, we must balance all seven.

*Core-Vent Corp. v. Nobel Indus. AB*, 11 F3d 1482, 1487-88 (9th Cir 1993) (citations omitted).

Defendants argue that a balancing of these seven factors militates against subjecting

them to jurisdiction in Oregon.  This court need not resolve this issue because NXS has not

established either of the two requirements necessary to establish personal jurisdiction over

either defendant in Oregon.

       **d.**       <u>**Conclusion**</u>

Because NXS has not met its burden of establishing either general or specific jurisdiction over either of the California defendants, the Complaint must be dismissed for lack of personal jurisdiction.

### III.  Lack of Proper Venue

Defendants also argue that the Complaint should be dismissed for lack of proper venue.  Venue is proper only in:

> (1) a judicial district where any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . . ; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 USC § 1391(b).

NXS does not dispute that it bears the burden of establishing proper venue.  *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F2d 491, 496 (9th Cir 1979).   NXS also does not dispute its inability to establish venue under the first two subsections of 28 USC § 1391(b).  Instead, it argues that the District of Oregon is the proper venue due to the existence of personal jurisdiction over defendants.  However, in light of NXS's failure to establish personal jurisdiction, venue is improper in this District.

When venue is not proper, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 USC § 1406(a).  A district court that lacks personal jurisdiction may transfer the case to a district court which has jurisdiction.  28 USC § 1631; *Goldlawr, Inc. v. Heiman*, 369 US 463, 466-67 (1962).  Since defendants have their principal place of business in Monterey, California, they are subject to personal jurisdiction in the District Court for the Northern District of California.

Transfer is preferred to the harsh remedy of dismissal because it avoids any statute of limitations problems and the necessity of filing and serving a new action. *Minnette v. Time Warner*, 997 F2d 1023, 1026-27 (2nd Cir 1993). In deciding whether to transfer rather than dismiss a case for improper venue, the court should consider the basic equities of the case, including judicial economy, the statute of limitations bar, and the relative injustice imposed on the parties. *See King v. Russell*, 963 F2d 1301, 1304-05 (9th Cir 1992).

It is not in "the interests of justice" to transfer an action that was obviously or deliberately filed in the wrong court. *Nichols v. G.D. Searle & Co.*, 991 F2d 1195, 1201 (4th Cir 1993) ("plaintiffs' attorneys here could have reasonably foreseen that when they brought their claims that the Maryland district court lacked personal jurisdiction over their actions"); *Dubin v. U.S.*, 380 F2d 813, 816 n5 (5th Cir 1967) (a transfer should not "be used to aid a non-diligent plaintiff who knowingly files a case in the wrong district."); *Stanifer v. Brannan*, 564 F3d 455, 457 (6th Cir 2009) (filing in the "nearest federal courthouse" to avoid statute of limitations deadline). On the other hand, "[a] compelling reason for transfer is that the plaintiff . . . will be time-barred if his case is dismissed and thus has to be filed anew in the right court." *Phillips v. Seiter*, 173 F3d 609, 610 (7th Cir 1999) (citations omitted). "At the same time, there is no reason to raise false hopes and waste judicial resources by transferring a case that is clearly doomed, for example because the statute of limitations had already run when the case was initially filed." *Id.*

Defendants contend that this case should be dismissed because NXS has no viable claim that can be resolved in any court. NXS alleges that defendants took the excessive fees from its bank accounts "during the period of December 2002 to June 2008." Complaint, ¶ 9. Therefore, defendants assert that all of NXS's claims are barred by the applicable statutes of limitations. Under California law, the statute of limitations is three years for the conversion (Second) claim

(CCP § 338); two years for the negligence (Third) claim (CCP § 335.1); three years for the fraud

(Fourth) and negligent misrepresentation (Fifth) claims (CCP § 338(d)); *William L. Lyon &*

*Assocs. v. Superior Court*, 204 Cal App4th 1294, 1312, 139 Cal Rptr2d 670, 683-84 (2012);

*Luksch v. Latham*, 675 F Supp 1198, 1204 n10 (ND Cal 1987)); two years for the breach of

covenant of good faith and fair dealing (Sixth) claim (CCP § 339); *Heighley v. J.C. Penney Life*

*Ins. Co.*, 257 F Supp2d 1241, 1247 (CD Cal 2003); and three years for the money had and

received (First) and unjust enrichment (Seventh) claims (CCP § 338(d)); *First Nationwide*

*Savings v. Perry*, 11 Cal App4th 1657, 1670, 15 Cal Rptr2d 173 (1992)).  NXS did not file the

Complaint until May 22, 2012, nearly four years after the last alleged act by defendants and well

after the applicable two-year and three-year statutes of limitation had expired.

However, NXS alleges that it did not discover the excessive fees until August 2009 and

entered into an agreement with defendants in August 2011 "with the intent to toll the statute of

limitations on any potential claims."  Complaint, ¶¶ 9, 10, 12.  Pursuant to California law, "a

statute of limitations does not begin to run until the cause of action accrues."  *Spear v. Cal. State*

*Auto. Ass'n*, 2 Cal4th 1035, 1040, 831 P2d 821, 824 (1992) (citations omitted); CCP § 312.  The

discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason

to discover, the cause of action."  *E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal App4th 1308,

1318, 64 Cal Rptr3d  9, 15 (2007) (citations omitted).   By statute, the discovery rule applies to a

claim "on the ground of fraud or mistake."  CCP § 338(d).  Therefore, based on alleged conduct

occurring through June 2008 which NXS did not reasonably discover until August 2009 and

which was tolled in August 2011, at least some of the tort claims are not barred by the applicable

two-year and three-year statutes of limitation.

NXS does not specifically allege a breach of contract claim.  If it did, the four-year statute

of limitations in California for a breach of contract claim (CCP § 337) would apply and not bar

such a claim.   The August 2011 tolling agreement saves at least a portion of a breach of contract

claim for acts occurring after August 2007 and before the collection of allegedly excessive fees

ended in June 2008.  Even without a tolling agreement, "judicial decisions have declared the

discovery rule applicable in situations where the plaintiff is unable to see or appreciate a breach

has occurred."  *E-Fab, Inc.*, 153 Cal App4th at 1318, 64 Cal Rptr3d at 15 (citation omitted).

Such situations may involve a breach of contract "committed in secret."  *See e.g., April Enters.,*

*Inc. v. KTTV*, 147 Cal App3d 805, 832, 195 Cal Rptr 421, 437 (1983).  NXS filed this Complaint

within four years after discovery of the allegedly excessive fees in August 2009.   Thus, not all of

NXS's claims are necessarily barred by the breach of contract statute of limitations.

As another reason to dismiss this case, defendants point to the provision in the Card

Sponsorship and Services Agreement which requires arbitration in California with the American

Arbitration Association for "any dispute between Bank and Customer relating to this Agreement,

or their performance under this Agreement."  Warner Decl., Ex. A, § 11.6.  That Agreement is

dated May 1, 2007, which also is the date of one of the seven arbitration agreements listed in the

draft Demand for Arbitration circulated by NXS to Monterey County Bank prior to filing the

Complaint.  *Id*, ¶ 12 & Ex. B.  NXS does not contest the validity of that Agreement or that it

circulated the draft Demand for Arbitration, but responds that its tort claims are premised on the

absence of any agreement.  However, as previously discussed, if defendants charged fees over

and above those allowed by the Agreement with NXS, then such conduct relates to the May 1,

2007 Agreement and similar agreements[3] and, thus, is subject to arbitration.

NXS also argues that under Oregon law, arbitration may not be demanded after the statute

of limitations has run on the claim, citing *Union County Sch. Dist. No. 1 v. Valley Inland*, 59 Or

App 602, 610, 652 P2d 349, 354 (1982).  However, that case does not support NXS's position.  It

merely holds that the court, and not the arbitrator, may decide that a claim is barred by the statute

of limitations "where the agreement provides that arbitration may not be demanded after the

statute has run on the claim, and where it is clear, as a matter of law, that the applicable statute

has run."  *Id.*  Moreover, it is unlikely that Oregon law applies to NXS's claims.

This court's only hesitancy in concluding that NXS's claims are subject to arbitration is

NXS's allegation that after executing the tolling agreement in August 2011, Monterey County

Bank asserted that the fees at issue were supported by an oral agreement and another document.

Complaint, ¶ 13.  NXS denies that it orally agreed to any such fees or that it viewed or agreed to

the document.  *Id.*  Based on that position, it is difficult to see how NXS can avoid mandatory

arbitration.  However*,* that allegation raises the prospect that defendants are relying on an oral

agreement or another document to justify their fees.  If so, then such agreements are not subject

to the mandatory arbitration provision in the May 1, 2007 Agreement and other similar

agreements.  However, until defendants file an Answer, it is too early to ascertain whether

arbitration of NXS's claims is required.

In sum, based on the incomplete record before this court, some of NXS's claims may not

be barred by the applicable California statutes of limitation, and the dispute may revolve around

---

[3] Based on the draft Demand for Arbitration and defendants' evidence, the parties entered into similar agreements beginning in 2002 which included the same mandatory arbitration provision.  Supp. Warner Decl., ¶ 3 & Ex. A (December 24, 2002 Card Sponsorship and Services Agreement).

an oral or written agreement that does not mandate arbitration.  If this case were dismissed and NXS were forced to file a new case in the proper venue, it may well lose many, if not all, of its claims due to the bar created by the applicable statutes of limitations.  Therefore, the interests of justice require a transfer to the District Court for the Northern District of California.  That court may then decide whether to extend the time for service on Northern California Bancorp, Inc., and whether to compel arbitration and, if so, whether to dismiss or stay the action.

## CONCLUSION

For the reasons set forth above, the service of process on Northern California Bancorp, Inc., is insufficient, but the time for service on that defendant should be extended.  However, this court lacks personal jurisdiction over both defendants.  As a result, venue is improper in this court and, in the interest of justice, this case should be transferred to the District Court for the Northern District of California where it could have been brought.

DATED September 17, 2012.


s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge

21 – OPINION